UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>MOHAMED A. EL RAFAEI<br><br>Debtor | Case No. 20-12583-KHK<br><br>(Chapter 7) |
| H. JASON GOLD, CHAPTER 7 TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>ANIS RHANIME,<br><br>Defendant. | AP No. 23-01043-KHK |

**MEMORANDUM OPINION**

This matter is before the Court pursuant to the Defendant's Motion for Summary Judgment and supplements thereto (Docket Nos. 11, 14, 15) and the Plaintiff's responses thereto (Docket No. 13). The Court has reviewed the papers and the arguments of the parties, and for the reasons that follow, the Court will grant summary judgment in favor of the Defendant. The following constitutes the Court's findings of fact and conclusions of law.

**UNDISPUTED FACTS**

The Court finds that the following facts are not genuinely in dispute:

On December 5, 2020, the Debtor filed schedules of his assets and liabilities (Bankruptcy Case Docket No. 24) and on July 15, 2021, the Debtor filed amended schedules of his liabilities (Bankruptcy Case Docket No. 123), each of which scheduled Mr. Rhanime as a creditor holding a $580,000 non-contingent, liquidated, undisputed claim.

On March 9, 2021, Mr. Rhanime filed proof of claim 13, asserting a claim of $708,994.48 (the "Rhanime Claim"), based upon the original note made by the Debtor, dated December 1, 2019 (the "Note"), less payments received, plus interest. See Attachment to Proof of Claim 13.

On November 23, 2022, the Trustee filed his first complaint against Defendant, commencing adversary proceeding 22-01089-KHK. (Case No. 22-01089-KHK, Docket No. 1) (the "First Complaint," and such adversary proceeding, the "Avoidance action") . Through the First Complaint, the Trustee sought, pursuant to 11 U.S.C. § 547, to recover two asserted preferential payments of $100,000 and $475,000 made, respectively, on December 3, 2019, and March 2, 2019. The First Complaint pleaded, inter alia:

> a. "Rhamine (sic) loaned the Debtor $1,156,000 in December 2019." First Complaint, ¶ 18.
>
> b. "The next day, on December 3, 2019, the Debtor transferred $100,000 from his personal bank account at Bank of America ending in 1717 to Rhamine (sic) to return some of the money loaned to him." First Complaint, ¶ 21.
>
> c. "In February 2020, the Debtor decided to return $475,000 of the money that Rhamine (sic) loaned to him. On March 2, 2020, the Debtor transferred $475,000 into his Socialize America account at Wells Fargo ending in 5159, and a check dated February 29, 2020 in the amount of $475,000 made out to Rhamine (sic) from the Socialize America account was cashed." First Complaint, ¶¶ 31-32.
>
> d. "The transfers were for or on account of an antecedent debt owed by the Debtor before the transfer was made." First Complaint, ¶ 38.

In a prior proceeding before this Court in response to a subpoena, the Trustee received a December 2019 Letter from the Debtor's prior attorney, Vikrant Bhatia (Docket No. 1-3) (the "Letter"). Through the Letter, the Trustee learned that a business dispute arose between Mr. Rhanime and the Debtor related to District Cafes, LLC. The Letter did not mention the Note or the $475,000 transfer at issue in the Avoidance Action. Based on this information, the Trustee sought to amend the complaint in the Avoidance Action to add the requests for relief sought in the instant adversary proceeding, but the Court denied the request requiring the Defendant to seek such relief by separate Complaint given the posture of the Avoidance Action and proximity to trial.

On August 6th, 2023, the Trustee filed the Complaint initiating this adversary proceeding, asserting therein, in essence, that based on the Letter, the $475,000 payment to Rhanime was actually a settlement of the business dispute between Rhanime and the Debtor, and that the Note and corresponding Proof of Claim was fraudulent. See Complaint, paragraphs 21-22, 29-31. Defendant answered on September 6, 2023, asserting typical denials and admissions, and raising res judicata, collateral estoppel, judicial estoppel, estoppel and waiver as affirmative defenses. Docket No. 4.

On December 11, 2023, this Court held a trial on the First Complaint in the Avoidance Action. The Trustee abandoned his fraudulent transfer counts at the beginning of the trial. The Trustee ultimately proved, and the Court found, that the alleged preferential transfers occurred and that they were on account of an antecedent debt, but because the Trustee failed to prove insolvency, the Court entered judgment for the Defendant. See Docket No. 11-5, Excerpt of Trial Transcript from Avoidance Action, 166:11-25.

On January 5, 2024, in accordance with the Court's Order Setting Trial entered on December 22, 2023 (Docket No. 9) in this matter, the Defendant filed its Motion for Summary Judgment asserting the various estoppel theories raised in its Answer. On January 12, 2024, the Trustee filed its Response in opposition. On January 18, 2024, the Defendant filed a Reply and on January 23, 2024, he filed a Supplemental Reply, citing to the Transcript from the hearing on the Motion to Amend the First Complaint in the Avoidance Action.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding as this cause of action arises under section 105 of the Bankruptcy Code. The Defendants and Plaintiff have consented to the entry of final orders by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670-71 (2015). See also Docket No. 3-2, Initial Scheduling Order, ¶ 5 ("Any party not consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to withdraw the reference or for other appropriate relief within 30 days of the entry of this Scheduling Order and shall promptly set

the matter for a hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy Judge.").

Summary judgment is appropriate where "there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. Pro. 56(a)). The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

Under Rule 7056, the Court must view the facts and the inferences reasonably drawn therefrom in the light most favorable to the nonmoving party, here the Plaintiff. *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992).

The issue before the Court is really whether there is a genuine dispute of material fact with respect to (1) the enforceability of Proof of Claim 13, and (2) whether Proof of Claim 13 was filed with fraudulent intent.

Enforceability:

Proof of Claim 13 is based on the Note attached thereto, dated December 1, 2019 in the original amount of $1,156,000. Before the Court turns to the specific arguments raised by the Defendant, because the validity and enforceability of the Note have been challenged, the Court first turns to whether the Note is enforceable under Virginia law. Here, the relevant law would be the statutes governing negotiable instruments under Virginia law. The Court notes that the parties did not brief enforceability under Virginia law but the law is nevertheless applicable to the Note.

4

Section 8.3A-104(a) of the Virginia Code provides that a "negotiable instrument" means

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Here, the Note is clearly a negotiable instrument. It provides an unconditional promise from the Debtor, payable to Mr. Rhanime, $1,145,000 with interest at 10%. The entire balance of the Note, with accrued interest and fees, was due and payable on June 2, 2020. Payment of the Note is not subject to any conditions and is not subject to any outside conditions or agreements as made clear by the integration clause at paragraph 12. Nor does the Note impose any undertaking or instruction on the borrower. Accordingly, the Note is a negotiable instrument, and its enforceability is subject to Section 8.3A-305 of the Virginia Code.

Section 8.3A-301 of the Virginia Code provides that a person entitled to enforce an instrument means:

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 8.3A-309 or § 8.3A-418 (d).

It appears from the record that there is no dispute that Mr. Rhanime is the holder of the instrument. Section 8.3A-302(a) of the Virginia Code provides that a holder in due course requires:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without

5

notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in § 8.3A-306, and (vi) without notice that any party has a defense or claim in recoupment described in § 8.3A-305 (a).

Value was clearly exchanged-- the Trustee's own Complaint acknowledges that $1,155,964.61 was transferred to the Debtor. There is no allegation that the Note was not made and taken in good faith beyond the conclusory allegation that the Note is fraudulent based solely on the December 2019 Letter from Mr. Bhatia. No other defenses to enforceability of the Note are alleged or argued. Although the Trustee argues that there is no Loan and that the debt is really a settlement of a business dispute, the Court finds that even in the light most favorable to the Trustee, the record does not support that argument.

Contrary to the Trustee's allegation in his Complaint, the Letter from Mr. Bhatia makes no mention of the $1,155,964 transfer but instead makes other grievances regarding much smaller transfers, misuse of credit cards and potentially inappropriate managerial decisions. Moreover, the Letter the Trustee relies on is dated December 18, 2019, and the Note that is signed by Mr. Rhanime and the Debtor is dated December 1, 2019. The funds were transferred on December 2, 2019. And yet the Letter does not mention the Note. There is no allegation that the Note was forged. Further, the transfer at issue in the avoidance action was a $475,000 transfer-- the settlement offer from the December 18, 2019 Letter is for $450,000.

While the Trustee may argue that the $475,000 payment is really on account of the Letter, the Court has already found in the Avoidance Action that the payment was a transfer made on account of an antecedent debt, the Note, as alleged and proven by the Trustee. Docket No. 11-5, Excerpt of Trial Transcript from Avoidance Action, 166:11-16. Accordingly, the Court will now turn to the law of issue preclusion.

The Court is mindful that it denied the Trustee's motion for leave to amend to add the two causes of action asserted herein. However, the Court finds that regardless of whether those claims were presented in this action or the Avoidance Action, they would fail for the same reason: because the Trustee proved to the Court that the debt at issue under the Note existed, and that the transfer of the $475,000 was made on account of that debt. In the Fourth Circuit and in Virginia,

      the proponent of issue preclusion must demonstrate that: "(1) the parties to the two proceedings, or their privies, be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior action and must have been essential to the prior judgment; and (3) the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action."

*In re Delph*, No. 19-72494-SCS, 10 (Bankr. E.D. Va. Jun. 7, 2021) (internal citations omitted).  In Virginia, issue preclusion requires a fourth element: mutuality.  If the parties to the prior action and to the present action are the same, then mutuality exists.  *Id.* (internal citations omitted).

      The Trustee and Mr. Rhanime are clearly the same parties from the Avoidance Action so the mutuality requirement and the first element are met.  The Trustee had a full and fair opportunity to litigate the Note's enforceability and the nature of the $475,000 transfer-- indeed, he proved, and the Court found that the debt existed and that the transfer was made on account of that debt.  The finding was essential to the judgment because it was a finding on a necessary element of the Avoidance Action.  Further, the prior action resulted in a judgment for the Defendant and against the Plaintiff.  Accordingly, the Court finds that in addition to its analysis supporting the Note's enforceability under Virginia law, collateral estoppel bars re-litigation of the enforceability of the Note or the nature of the $475,000 transfer on account thereof.

      Because the Court finds that the Note is enforceable and that collateral estoppel applies, the Court need not address the Defendant's quasi-estoppel, judicial admissions and judicial estoppel arguments.

      Based on the foregoing, the Court finds that the Defendant has demonstrated that there is no genuine dispute of material fact with respect to the enforceability of the Note and that he is entitled to judgment as a matter of law.  The Court will therefore grant summary judgment in favor of the Defendant on Count 1.

<u>Whether the Proof of Claim was Fraudulent</u>:

      With respect to Count 2 which seeks sanctions for the filing of a fraudulent proof of claim, the only basis for asserting that the claim and underlying Note is fraudulent is the Letter from Mr. Bhatia.  Based on the Court's foregoing analysis however, the Court finds that the Letter is insufficient to create a genuine dispute of material fact as to any fraudulent intent on the part of Mr. Rhanime - on the contrary, the Court finds that the Defendant has demonstrated that there is no genuine dispute-- even in the light most favorable to the Trustee, the Court cannot find fraudulent intent.

In addition to the Court's foregoing analysis, the Court also notes that the only fraudulent motive alleged by the Trustee is Mr. Rhanime's purported desire to dilute recovery to the rest of the creditor body. While the Court will not attempt to forecast creditor recoveries in this case, it is enough to note that funds actually were transferred to the Debtor, undercutting any theory that the claim is fabricated and not actually owed in the asserted amounts, which is the only way that the estate would be diluted by the claim. Even the Trustee admits in his response at Docket No. 13, pg. 11 "[t]his case is not about the amount owed." In sum, the Court is left with a record demonstrating a valid and enforceable Note, a Proof of Claim thereon and a Letter that does not show the fraudulent scheme that the Trustee says it shows.

With no other evidence or allegation supporting the Trustee's assertion that the Note and Proof of Claim are fraudulent, the Court finds that there is no genuine dispute on this issue and the Defendant is entitled to judgment as a matter of law. The Court will therefore grant summary judgment in favor of the Defendant on Count II of the Complaint.

While the Defendant has requested attorneys' fees in this matter, the general rule is that parties are responsible for their own legal fees. The Court finds that the record before it does not justify a departure from that rule and therefore, the Court will deny the Defendant's request for an award of legal fees in this matter.

## CONCLUSION

Accordingly, the Court will dismiss the Complaint in its entirety, with prejudice. Counsel for the Defendant is hereby instructed to submit to the Court a Judgment Order consistent with this ruling.

The Clerk is hereby instructed to provide a copy of this Opinion and electronic notice of its entry to all counsel of record.

Entered On Docket: Feb 21 2024

Date: Feb 21 2024

/s/ Klinette H Kindred

Klinette H. Kindred
United States Bankruptcy Judge